## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORDIA

CASE NO.: 21-cv-62447-JEM/Becerra

JORGE ALMEIDA,

      Petitioner,

v.

RICKY D. DIXON, Secretary,
Florida Dept. of Corrections

      Respondent.

_____/

## REPORT AND RECOMMENDATIONS ON PETITION FOR
## WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

**THIS CAUSE** is before the Court upon Petitioner Jorge Almeida's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), which challenges Petitioner's convictions following a jury verdict and resulting sentences for attempted first degree murder, armed kidnapping, and attempted armed robbery entered in Broward County Circuit Court, Case No. 15-16355CF10A.[1]  ECF No. [5].  The State filed its Response in Opposition to the Petition for Writ of Habeas Corpus, and Petitioner filed a Reply.  ECF Nos. [10], [16].  The State also filed an Appendix of exhibits, as well as transcripts of Petitioner's trial and sentencing hearing.  ECF Nos. [11-13].  Upon careful consideration of the Petition, the pertinent portions of the record, and the relevant authorities, for the reasons stated below, the undersigned **RECOMMENDS** that the Petition be **DENIED**.

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. *See* ECF No. [7].

## I.   FACTUAL AND PROCEDURAL HISTORY

On December 21, 2015, Petitioner was arrested after forcing a mother ("victim mother") and her eighteen-year-old son ("victim son")—at gun point—to drive Petitioner from an elementary school parking lot to an empty rest stop where Petitioner told each of them "do you want to live, or do you want to die" and demanded money to buy drugs.  ECF No. [12-1], T. 236-249.[2]  Petitioner also expressed suicidal ideations, telling the victims that they could either kill him or help him.  *Id*., T. 248, 324.  A struggle ensued between the victim son and Petitioner, during which Petitioner shot the victim son and attacked him with a knife.  *Id.,* T. 252-56.  The victim son restrained Petitioner with the help of a good samaritan.  *Id*., T. 252-56.  Police officers responded after the victim mother and the good samaritan's wife called 911.

On the scene, the police read Petitioner his Miranda rights.  After receiving his Miranda rights, Petitioner made incriminating statements.  ECF Nos. [11-1], Ex. 2.; [12-1], T. 467-511.  Later at the police station, Petitioner signed a Miranda waiver and was interviewed.  *Id.*  That interview was videotaped.  *Id.* During the recorded interview at the station, Petitioner made several statements explaining his actions and acknowledging his wrongdoing.  For example, Petitioner stated that "I just saw an opportunity . . .  I figure I'm going to take advantage of these people and, you know, try to get some money so I can buy weed."  ECF No. [12-1], T. 480; *see also Id*., T. 506 ("I just figured they looked like easy prey.  Let me get some money and, you know, try to me [sic] get some, you know, weed.").  Petitioner further stated that "I understand that I broke the law.  I understand, you know, that they were kidnapped for, you know, several miles . . .  I also

---

[2] Unless otherwise noted, the page numbers identifying Respondent's Appendix, docketed at ECF No. [11-1] are those imprinted by CM/ECF, the Court's electronic docketing system on the upper, right-hand corner of the filings.  The letter "T" in this report followed by a page number refers to the trial and sentencing hearing transcripts, docketed at ECF Nos. [12-1] and [13-1], and the actual page number of the transcripts.

understand that I put the gun to her belly . . . ." *Id.*, T. 499.  Petitioner also stated that "[i]f you want to believe me, that's fine.  If not, I'm ready to face the consequences . . .  I'm, you know, willing to take any punishment or whatever.  I am not a killer.  Maybe that's why, you know, I didn't kill myself.  I didn't have the guts." *Id.* T. 506.  Moreover, Petitioner stated that "I'm not trying to excuse myself.  I did what I did.  I'm just happy that they are not dead, and, you know, I'm ready to face the consequences." *Id.*, T. 509.

On April 26, 2016, Petitioner was charged by Amended Information with attempted first degree murder, in violation of Fla. Stat. §§ 777.04, 782.04(1), 775.087, and 775.087(2)(a)2 (Count 1), two counts of kidnapping while armed with a firearm, in violation of Fla. Stat. §§ 787.01, 775.087(1)(a), 775.087(2)(a)1.h., 775.087(2)(a)2, and 775.087(2)(a)3 (Counts 2 and 3), and two counts of attempted robbery with a firearm, in violation of Fla. Stat. §§ 812.13(2)(a), 775.087(2)(a)1.c, 775.087(2)(a)2, 775.087(2)(a)3, and 777.04 (Counts 4 and 5).  ECF No. [17-1], Ex. 6.

Prior to trial, Petitioner was evaluated by two psychologists.  ECF No. [11-1], Exs. 4, 5.  Dr. Allan Ribbler performed a neuropsychological evaluation of Petitioner and found that Petitioner's "pattern of responses was most consistent with a diagnosis of posttraumatic stress disorder . . . and there was evidence of severe depression including suicidal ideation." *Id.*, Ex. 4.  Dr. Ribbler also found Petitioner's "pattern of behavior is common in individuals who have suffered traumatic brain injury . . . ." *Id.*  Dr. Ribbler gave no indication that Petitioner was legally insane at the time of the crime, nor did he offer any opinion to that effect.

The second psychologist, Dr. Michael G. Simonds, prepared an Insanity Evaluation Report.  *Id.*, Ex. 5.  Dr. Simonds found that Petitioner was suffering from Bipolar II Disorder and "[h]is thinking was likely impaired, but he seems to have comprehended that what he was doing was

criminal and wrong." *Id*.  Dr. Simonds opined that Petitioner "does not meet the M'Naghten standard for insanity." *Id*.  Dr. Simonds testified at Petitioner's sentencing hearing, where he reiterated that Petitioner suffered from Bipolar II Disorder, and reaffirmed his opinion that Petitioner did not meet the legal criteria for insanity because Petitioner "knew what he was doing was wrong and he understood the consequence."  ECF No. [13-1], T. 113, 116, 118, 122.

Petitioner proceeded to trial where both victims testified, along with the good samaritan and his wife.  ECF No. [12-1].  Law enforcement officers also testified, and the DVD of Petitioner's police interview was played for the jury.  *Id*.  Before closing arguments began, Petitioner's counsel requested a *Nixon* hearing, explaining that she wanted to "place on the record where I may be making strategy decisions regarding my closing so I have my client's permission to go forward . . . ." *Id*., T. 618-19.  The *Nixon* hearing was held without the presence of the State or its witnesses.  *Id*., T. 619.

During her closing argument, Petitioner's counsel acknowledged the statements that Petitioner made during his recorded interview and tried to focus the jury's attention on the lesser included offenses, rather than the higher offense charged in each count.  In particular, Petitioner's counsel told the jury "[y]ou know without a doubt he was suicidal, and you know mental health and guns don't mix." *Id*., T. 651.  She also explained that "you have more than just the five counts you can decide.  You have each of those lesser includes.  You can have that discussion. *Id*.  Further, Petitioner's counsel stated:

> He said, I understand I broke the law.  I understand I kidnapped them.  He was using the word kidnapped in the ordinary sense that we use it, not what you have been presented here as the law in your discussions.  There are some very important things going on in these verdict forms.  What we are asking you for is a fair and just verdict. What we are asking you for is your understanding in this case.

*Id.*, T. 653.  Petitioner's counsel then made the following statements, which are at issue in one of

the claims raised in the Petition:

> What we are asking you for is on count one, the attempted first-degree murder, to consider everything.  We are asking you for a not guilty as to count one.  That one we are asking you for a not guilty.

> *****

> Count two.  We are asking for a guilty verdict. I understand I broke the law.  I want to face the consequences.  He is asking you for a guilty verdict, but he is asking you for guilty as to assault, a lesser-included offense.  We are asking for your understanding.  We are asking for no on all of these interrogatories.

> ****

> On count three, the same thing.  He is asking for a guilty verdict as to the assault, and he is asking you for no on here.  On count four, he is asking for either the assault or the guilty of persons engaged in a criminal offense having a weapon.  He is asking for either one of those, and the no where appropriate.

> ****

> He is asking you for a guilty verdict on count five, the same thing.  He is asking you for – and I will tell you I think the attempted robbery is problematic myself because if we wanted robbery, we shouldn't be here, we should be somewhere else.  And there were obviously opportunities for robbery.  Despite that, he is asking you for . . . guilty of assault of persons engaged in [having] a weapon.

*Id.*, T. 653-54.  The jury returned a verdict finding Petitioner guilty as charged.  ECF No. [11-1],

Ex. 7. Petitioner was adjudicated guilty and sentenced to two concurrent terms of life

imprisonment with a mandatory minimum period of twenty-five years' imprisonment as to Counts

1 and 2, and a concurrent term of thirty years' imprisonment with a mandatory minimum period

of twenty-five years' imprisonment as to Count 4.  ECF Nos. [11-1], Ex. 16; [13-1], T. 162-63.

With respect to Count 3, Petitioner was sentenced to a lifetime term of imprisonment with a

mandatory minimum period of twenty years' imprisonment, and a concurrent term of thirty years'

imprisonment with a mandatory minimum period of twenty years' imprisonment as to Count 5. *Id.* The sentences imposed for Counts 3 and 5 run consecutive to the sentences imposed for Counts 1, 2 and 4. *Id.*

## A.   Petition's Direct Appeal

Petitioner timely appealed and raised two claims of trial court error, namely that: (1) the State improperly relied on evidence and argument creating sympathy for the victims, and (2) the trial court erred in denying Petitioner's motion for judgment of acquittal as to attempted murder. ECF No. [11-1], Ex. 17. The Fourth District Court of Appeal *per curiam* affirmed the convictions and sentences in a decision without written opinion. *See Almeida v. State*, 282 So. 2d 83 (Fla. 4th DCA 2019); ECF No. [11-1], Ex. 21. Rehearing was denied on November 13, 2019, and the mandate issued on December 6, 2019. *Id.*, Ex. 23-24.

## B.   Post-Conviction Proceedings

On October 16, 2020, Petitioner filed a counseled motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850 ("Rule 3.850 Motion"), which raised two claims: (1) that trial counsel was ineffective for conceding guilt to lesser included offenses when the concession of guilt had no chance of success and where the only viable defense was a defense of not guilty by reason of insanity and (2) Petitioner was denied due process because Florida law barred the use of psychiatric evidence of mental disease or defect and medical evidence of traumatic brain injury to rebut an element of each charged offense and, "as a corollary," trial counsel was ineffective for failing to preserve this issue for direct appeal. *Id.*, Ex. 25. The State filed a comprehensive response, ECF No. [11-1], Ex. 26, and the trial court thereafter entered an Order denying the Rule 3.850 Motion on the merits. *Id.*, Ex. 27.

In its Order, the trial court "adopt[ed] and incorporate[d] . . . the legal and factual reasoning that is contained in the State's Response" and denied both claims. *Id*. As to Petitioner's first claim, the trial court found that "[t]his claim is meritless, speculative, conclusory, and refuted by the record. This claim fails to satisfy the two-pronged test set forth in *Strickland* . . . as there was no deficiency of counsel and no prejudice." *Id*. As to the second claim, the trial court found that "[t]his claim is meritless. Trial counsel cannot be deemed to be ineffective for failing to seek to introduce evidence of a meritless defense. This claim fails to satisfy the two-pronged test set forth in *Strickland* . . . as there was no deficiency of counsel and no prejudice." *Id*. Petitioner, through counsel, appealed the Order denying his Rule 3.850 Motion. *Id,* Ex. 28-29. The Fourth District Court of Appeal *per curiam* affirmed the trial court's order in a decision without written opinion. *See Almeida v. State,* 330 So. 3d 25 (Fla. 4th DCA 2021); ECF No. [11–1], Ex. 30. On January 4, 2022, Petitioner's motion for written opinion was denied and the mandate issued on January 21, 2022. ECF No. [11-1], Ex. 32-33.

## II.     THE INSTANT PETITION

Petitioner raises two Claims in the Petition. The first Claim asserts that Petitioner "received ineffective assistance of counsel as a result of his trial counsel's strategy of conceding guilt to lesser included offenses when the concession of guilt had no chance of success [and] instead, the only viable defense was a defense of not guilty by reasons of insanity [which was] the defense that should have been argued." ECF No. [5] at 18. As to the latter argument, Petitioner contends that "[t]he only viable defense available . . . on the facts of [this] case was insanity" which he asserts does not require the use of expert testimony. *Id*. at 25-27. Petitioner also argues that his counsel was "further deficient in failing to continue to seek an expert who would have been able to opine that [Petitioner] was legally insane." According to Petitioner, [a]ny reasonably competent defense

7

counsel on the facts of this case would have continued to seek an expert until an expert were found who would support the insanity defense . . . ." *Id*. at 27-28.  As to the remainder of Petitioner's argument, he contends that "there was no advantage whatsoever to conceding guilt to the lesser included offenses because it provided no defense to the armed kidnapping charge."  ECF No. [16] at 2.  Petitioner posits that "[t]he Court cannot be confident beyond a reasonable doubt that the jury would have returned a not guilty by reason of insanity defense had it been presented . . . ." ECF No. [5] at 31.

In his second Claim, Petitioner asserts that he was "denied due process of law as a result of the Florida Supreme Court precedent which barred his use of psychiatric evidence of mental disease or defect and medical evidence of traumatic brain injury to rebut an element of each charged offense, that is, specific intent or *mens rea* and as a corollary his trial counsel was ineffective for failing to preserve the issue for direct appeal by proffering a defense of lack of specific intent or *mens rea* resulting from his mental condition and traumatic brain injury."  *Id*. at 37.  In particular, Petitioner contends that Florida's prohibition of a diminished capacity defense violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.  *Id*. at 38.  Petitioner further argues that "a reasonably competent criminal defense counsel would have recognized that Florida's *per se* rule prohibiting diminished capacity defenses challenging specific intent violates Due Process, and would have proffered the defense and sought a jury instruction on the defense . . . . and had counsel done so, this Court cannot be confident that the outcome of the trial would have been the same had such evidence and defense been presented to the jury."  *Id*. at 39

The State filed a Response in Opposition to the Petition.  ECF No. [10].  The State agrees that the Petition is timely, but contends that Petitioner failed to exhaust his remedies in state court

with respect to the portion of Petitioner's second claim that asserts a due process violation because he did not raise that argument on direct appeal and, thus, it is procedurally defaulted. *Id*. at 22-24. The State also contends that Petitioner's ineffective assistance of counsel claims fail on the merits. Specifically, as to Petitioner's first claim, the State argues that the denial of Petitioner's Rule 3.850 Motion was not an unreasonable application of *Strickland* because "any attempt by Petitioner to demonstrate that he was legally insane at the time of the incident would not have been successful under Florida law" given that the record shows "Petitioner knew the nature and consequences of his actions and was clearly able to distinguish right from wrong, even if he does suffer from or otherwise has a history of mental infirmity, defect or disease." *Id*. at 35-37.  The State also argues that "defense counsel made a reasonable strategic decision to concede to the lowest offenses on the verdict form . . .  to obtain credibility with the jury" given the "overwhelming evidence of Petitioner's guilt introduced at trial . . . ." *Id*. at 34.  As to the remainder of Petitioner's second claim, the State argues that "[b]ecause Florida does not recognize the defense of diminished capacity, and Petitioner cannot cite anything to support the refusal of Florida courts to recognize the defense as a due process violation, trial counsel cannot be deemed ineffective for failing to present such a defense and/or failing to preserve it as a due process violation for appellate review." *Id*. at 39-40.

### III.   ANALYSIS

This court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul–Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga. Diagnostic & Classification Prison,* 818 F.3d 600, 642 (11th Cir. 2016).  The AEDPA ensures that federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *See Greene v. Fisher,*

565 U.S. 34, 38 (2011) (quotation marks and citation omitted); *Ledford,* 818 F.3d at 642. The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster,* 563 U.S. 170, 186 (2011) (citations omitted).

The AEDPA standard is both mandatory and "difficult to meet." *White v. Woodall,* 572 U.S. 415, 419 (2014) (citation omitted). It imposes a "highly deferential standard for evaluating state-court rulings [and] demands that [state court decisions] be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *See Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen,* 563 U.S. at 181–82; *see also Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011).

Under the AEDPA, a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017). Further, for purposes of federal habeas review, "clearly established

federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision. *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Lee,* 726 F.3d at 1192 (citation omitted). "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding." *Gary v. Hall,* 558 F.3d 1229, 1254 (11th Cir. 2009) (citing *Newland v. Hall,* 527 F.3d 1162, 1196–1201 (11th Cir. 2008)). Thus, district courts must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington,* 562 U.S. at 100; *Meders,* 911 F.3d at 1351 (citation omitted).

Petitioner bears "the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." *See Fillmore v. Perry,* 163 F. App'x 819, 820 (11th Cir. 2006) (per curiam) (citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)). Thus, to warrant relief, Petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Lee*, 726 F.3d at 1192 (quoting *Harrington,* 562 U.S. at 103). An unreasonable application of federal law differs from an incorrect application of federal law. *Renico*, 559 U.S. at 773 (citation omitted). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden, Att'y Gen., State of Ala.,* 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's determination of the facts is unreasonable only if no fair-minded jurist could agree with the state

11

court's determination . . . ." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Even where a state court decision "addresses some but not all of a defendant's claims," that decision is an adjudication "on the merits" for purposes of the AEDPA.  *See Johnson v. Williams,* 568 U.S. 289, 298–99 (2013) (observing some claims may be too insubstantial to merit discussion). The United States Supreme Court has cautioned that "federal courts have no authority to impose mandatory opinion-writing standards on state courts," and due to the heavy caseload shouldered by many appellate courts, "opinions issued by these courts must be read with that factor in mind." *Lee,* 726 F.3d at 1212 (quoting *Johnson,* 568 U.S. at 299–300).  In any event, federal courts are authorized to deny a federal relief when the claim is subject to rejection under *de novo* review, regardless of whether the AEDPA deference applies.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected *de novo* review); *Conner v. GDCP Warden,* 784 F.3d 752, 767 (11th Cir. 2015) ("[B]ecause we conclude that Mr. Conner would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

> **A.      The Petition Is Timely.**

Respondent concedes that the Amended Petition was timely filed.  ECF No. [10] at 20. Because Respondent has explicitly waived the statute of limitations defense, this Court need not determine whether the waiver is accurate.  *See* 28 U.S.C. §2244(d)(1)-(2); *Wood v. Milyard,* 566

U.S. 463, 473 (2012)[3] (citing *Day v. McDonough,* 547 U.S. 198, 210-11 (2006)).  As such, the Petition is timely.

### B.   Petitioner's First Claim Has No Merit.

In his first Claim, Petitioner argues that his trial counsel was ineffective for two reasons: (1) by conceding Petitioner's guilt to lesser included offenses, and (2) by failing to present the defense of not guilty by reason of insanity.  ECF No. [5] at 18, 25-28 (emphasis added).  Claims of ineffective assistance of counsel are governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  The two-prong test requires Petitioner to demonstrate that (i) counsel's performance was deficient, and (ii) there is a reasonable probability that the deficiency resulted in prejudice.  *See Strickland,* 466 U.S. 668 at 687.

Deficient performance requires Petitioner to demonstrate counsel's actions were unreasonable or fell below prevailing professional competence demanded of defense attorneys. *Strickland,* 466 U.S. at 688.  The *Strickland* deficiency prong does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Dingle v. Sec'y, Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007).  Even with the benefit of hindsight, where counsel's decision appears unwise, it will only be ineffective if it was so unreasonable no attorney would have chosen it.  *Id.* at 1099.

*Strickland*'s prejudice prong requires Petitioner to establish that, but for counsel's deficiency, there is a reasonable probability that the result of the proceeding would have been

---

[3] In *Wood,* the United States Supreme Court held that a federal court abuses its discretion by considering a statute of limitation defense that has been affirmatively waived, as opposed to merely forfeited.  *Wood,* 566 U.S. at 473.  *See also Green v. United States,* 735 F. App'x 687, 688 (11th Cir. 2018) (per curiam) (citing *In Re Jackson,* 826 F.3d 1343, 1348 (11th Cir. 2016)).

different. *Strickland,* 466 U.S. at 694. If Petitioner cannot meet one of *Strickland*'s prongs, the Court need not address the other prong. *Id.* at 697; *Brown v. United States,* 720 F.3d 1316, 1326 (11th Cir. 2013). Also, bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333-34 (11th Cir. 2012).

> **1.    Trial Counsel Was Not Ineffective For Conceding Guilt to Lesser Included Offenses.**

Petitioner contends that his attorney's performance was deficient because, in closing argument, she asked the jury to return a verdict of guilty on the lesser included offenses in Counts Two through Five. ECF No. [5] at 29-30. A defense counsel's concession of guilt is not necessarily unreasonable or prejudicial. "[W]hen counsel concedes a defendant's guilt as a tactical decision, designed to lead the jury towards leniency on the other charges and to provide a basis for a later argument (to the judge) for a lighter sentence, such a tactical retreat is deemed to be effective assistance." *Darden v. United States*, 708 F. 3d 1225, 1230 (11th Cir. 2013) (quotation marks and citations omitted). Indeed, the Eleventh Circuit has recognized "the obvious benefits of strategically conceding partial guilt." *Id*. at 1230. Particularly when there is overwhelming evidence against the defendant, defense counsel may reasonably "conced[e] obvious guilt" to certain charges "for the express purpose of preserving credibility with the jury to focus on vigorously defending" the more serious charges. *Id*.; *see also Atwater v. State*, 788 So. 2d 223, 230 (Fla. 2001) ("Sometimes concession of guilt to some of the prosecutor's claims is good trial strategy and within defense counsel's discretion in order to gain credibility and acceptance of the jury.").

Here, the evidence at trial against Petitioner was exceedingly strong. Petitioner's own incriminating statements were played for the jury where he admitted his wrongdoing and agreed

to accept the consequences.  ECF No. [12-1], T. 480, 499, 506, 509.  The jury also heard lengthy testimony from the victims and other witnesses, including two eyewitnesses, that implicated Petitioner.   Given the overwhelming evidence against Petitioner, the record supports the conclusion that defense counsel made a strategic decision to concede Petitioner's guilt to lesser included offenses.  "It is well established that strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State,* 768 So.2d 1037, 1048 (Fla. 2000) (quotation marks and citation omitted); *see also Dingle,* 480 F.3d at 1099 (a tactical decision amounts to ineffective assistance "only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983)).

Further, the record supports the conclusion that trial counsel's strategy was a reasonable attempt to avoid Petitioner's conviction on the higher charges in Counts Two through Five, as well as the charge for attempted murder in Count One.  The fact that the chosen trial strategy was unsuccessful, and Petitioner was convicted of the higher crimes, does not make counsel's actions deficient.  *See Sireci v. State*, 469 So. 2d 119, 120 (Fla. 1985).  In short, the record as a whole reflects that Petitioner's counsel vigorously challenged the State's case and supports a determination that counsel's statements in closing argument do not reflect either deficient performance or prejudice.  Accordingly, the undersigned concludes that the state court's rejection of this ineffective assistance claim is not contrary to or an unreasonable application of *Strickland* or any other clearly established federal law as determined by the Supreme Court, nor is it based on an unreasonable determination of the facts.

## 2.      Trial Counsel Was Not Ineffective For Failing To Present An Insanity Defense.

Petitioner also argues that his defense counsel was deficient because she did not present a defense of not guilty by reason of insanity and did not continue searching for an expert who would support such a defense.  ECF No. [5] at 26-28.  The record reflects that Petitioner's trial counsel retained two psychologists who examined Petitioner and issued written opinions.  ECF No. [11-1], Exs. 4, 5.  None of those opinions gave any indication that Petitioner was legally insane at the time of his crimes and, indeed, one of the psychologists expressly opined that Petitioner did not meet the applicable M'Naghten standard for insanity because Petitioner "knew what he was doing was wrong and he understood the consequence."  ECF No. [13-1], T. 113, 116, 118, 122.

Petitioner's assertion that his trial counsel should have sought to introduce lay testimony to demonstrate inanity, or found a doctor who would so testify, is without merit.  ECF No. [5] at 25-27.  In his recorded interview, Petitioner refuted the basis of an insanity defense by admitting that he understood the nature and consequences of his actions.  For example, Petitioner stated that "I understand that I broke the law.  I understand, you know, that they were kidnapped for, you know, several miles . . .  I also understand that I put the gun to her belly . . . ."  ECF No. [12-1], T. 499.  Petitioner also stated that ". . . I'm ready to face the consequences . . . " *Id*. T. 506.  Further, Petitioner stated that "I'm not trying to excuse myself.  I did what I did.  I'm just happy that they are not dead, and, you know, I'm ready to face the consequences." *Id*., T. 509.  In the face of such evidence, Petitioner has not explained how an insanity defense would have been successful. *Strickland* does not require an attorney to raise a defense that is meritless or which has little to no chance of success. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("This Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or

16

realistic chance of success.").  Indeed, "[t]he law does not require counsel to raise every available nonfrivolous defense."  *Id*. at 127 (citations omitted).

Moreover, trial counsel did secure two psychologists to examine Petitioner.  The fact that trial counsel accepted their opinions, even though none found that Petitioner was legally insane, does not render her performance deficient.  The Eleventh Circuit has "made clear that counsel is not required to 'shop' for a psychiatrist who will testify in a particular way."  *Card v. Dugger,* 911 F.2d 1494, 1513 (11th Cir.1990) (citation omitted); *see also Pace v. McNeil,* 556 F.3d 1211, 1220– 21 (11th Cir.2009) ("Counsel diligently obtained two mental health professionals to examine Pace prior to trial but those experts failed to provide counsel with favorable information. As indicated above, counsel is not deficient for reasonably relying upon the opinions of [the psychiatrists] and not seeking out additional experts.").  Also, Petitioner has not shown that there was a psychologist who would opine that he satisfied the legal standard for insanity. The state court's conclusion that this claim is "meritless, speculative, conclusory and refuted by the record," and that "there was no deficiency and no prejudice [under *Strickland*] is sound.  Accordingly, the undersigned concludes that the state court's rejection of this ineffective assistance claim is not contrary to controlling federal constitutional principles or based on an unreasonable determination of the facts.

**C.    Petitioner's Second Claim Has No Merit.**

In his second Claim, Petitioner asserts that Florida's prohibition on the use of a diminished capacity defense to rebut specific intent violated his due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, "and as a corollary[,]" his trial counsel was ineffective for failing to preserve the issue for direct appeal by proffering a defense of lack of specific intent . . .  resulting from his mental condition and traumatic brain injury."  ECF No. [5] at 37-39.  The State argues that the due process component of this claim is unexhausted because

Petitioner did not raise the issue on direct appeal, and therefore, it is procedurally barred.  ECF No. [10] at 22-23.

As an initial matter, Petitioner does not dispute the State's assertion that his due process argument is procedurally barred, thereby conceding its correctness.  *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.  Also, when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citations omitted); *see also Ewing v. Carnival Corp.*, No. 19-20264-Civ, 2023 WL 2524530, at *3 (S.D. Fla. March 15, 2023) ("A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness.") (citations omitted).

Nevertheless, even if Petitioner had exhausted his due process claim, he wholly fails to meet his burden to demonstrate that a due process violation occurred, and the Claim should also be denied on that basis.  Indeed, Petitioner makes no effort to explain why Florida's prohibition on the use of a diminished capacity defense violate due process.  Petitioner merely asserts that "[t]o hold otherwise would violate Due Process" and "Florida's blanket prohibition of such evidence and the defense itself violates Due Process."  ECF No. [5] at 38.  Petitioner provides no case law to support his assertion, and the few cases he does cite are inapplicable, as none hold that the inability to present a diminished capacity defense violates due process.  *Id*.[4]  In short, the

---

[4] Notably, Supreme Court precedent undermines Petitioner's argument.  In *Clark v. Arizona*, the Supreme Court found that a state rule allowing evidence of mental illness to be considered *only* for its bearing on an insanity defense—and *not* on the issue of specific intent—does not violate a criminal defendant's right to due process.  *See Clark*, 548 U.S. 735, 742 (2006) (holding that "there is no violation of due process" where state "restrict[s] consideration of defense evidence of mental illness and incapacity to its bearing on a claim of insanity, thus eliminating its significance directly

Motion lacks *any* analysis, and the Reply is silent as to Petitioner's due process argument.  Indeed, the Reply does not address Petitioner's second Claim at all.  ECF No. [16], *generally*.

Petitioner's ineffective assistance of counsel argument fares no better.  Petitioner asserts that trial counsel was ineffective for failing to preserve his alleged due process claim for direct appeal and failing to proffer "a defense of lack of specific intent . . .  resulting from his mental condition and traumatic brain injury."  ECF No. [5] at 37, 39.  Neither basis has merit.  Again, Petitioner offers no supporting analysis or precedent.  *Id*.  And again, Petitioner's argument is contradicted by binding authority.  Under Florida law, "[d]enial of the due process right to be heard prior to deprivation of one's liberty is fundamental error which may be raised on appeal even if not preserved below."  *Ibur v. State*, 765 So. 2d 275, 276 (Fla. 1ˢᵗ DCA 2000); *see also*, *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998) (fundamental error, which can "be raised on appeal in the absence of a contemporaneous objection," is one which "goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.").  Petitioner fails to explain how, in light of such authority, the alleged ineffectiveness of his trial counsel prevented Petitioner from raising his due process claim on direct appeal.

Further, there is no dispute that Florida law bars the use of a diminished capacity defense.  Indeed, it is well-established in Florida Supreme Court precedent that evidence of mental illness not constituting legal insanity is inadmissible at trial.  *See Chestnut v. State*, 538 So. 2d 820 (Fla. 1989) (collecting cases and holding that evidence of an abnormal mental condition not constituting legal insanity is inadmissible for the purpose of proving that the defendant lacked the specific intent to commit the crime charged).  Trial counsel cannot be deemed ineffective for failing to

---

on the issue of the mental element of the crime charge (known in legal shorthand as the *mens rea*, or guilty mind).").

present a defense that is prohibited under Florida law.  *See e.g., Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding counsel is not ineffective for failing to present meritless argument); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (same); *U.S. v. Winfield*, 960 F. 2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").  Moreover, Petitioner has not cited any "clearly established Federal law, as determined by the Supreme Court of the United States" that holds a state's refusal to recognize a diminished capacity defense constitutes a due process violation.  Rather, case law is to the contrary. *See Clark*, 548 U.S. at 742.

For these reasons, the state court's rejection of Petitioner's second Claim is not contrary to or an unreasonable application of controlling federal constitutional principles, nor is it based on an unreasonable determination of the facts.

## IV.    EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on Petitioner to establish the need for a federal evidentiary hearing.  *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011).  To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief.  *See Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.,* 834 F.3d 1299, 1319 (11th Cir. 2016).  However, "[w]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"  *Cullen,* 563 U.S. at 183 (quoting *Schriro,* 550 U.S. at 474).  The pertinent facts are fully developed in the record before this Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," an evidentiary hearing is not warranted.  *Turner v. Crosby,* 339 F.3d 1247, 1275 (11th Cir. 2003).

## V.     CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000) and *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id* After careful consideration of the record in this case, it is recommended that no certificate of appealability issue. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the District Judge pursuant to the Objections section below.

## VI.     RECOMMENDATIONS

Based upon the foregoing, it is **RECOMMENDED** that the Amended Petition, ECF No. [5], be **DENIED** and a certificate of appealability be **DENIED**.

## VII.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely

file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4,* 977 F.3d 1185, 1191-92 (11th Cir. 2020).

      **DONE AND SUBMITTED** this 23rd day of January, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**